**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DODICH,

    Plaintiff,

v.

PFIZER INC.; PHARMACIA CORPORATION; PARKE, DAVIS & CO.; WARNER LAMBERT COMPANY; WARNER LAMBERT COMPANY, LLC; and MCKESSON CORPORATION,

    Defendants.

No. C 18-02764 WHA

**ORDER GRANTING MOTION TO REMAND**

**INTRODUCTION**

In this product-liability action, plaintiff moves to remand the case due to a lack of diversity jurisdiction. For the reasons stated below, plaintiff's motion is **GRANTED**.

**STATEMENT**

This is yet another attempt to remove a product liability action involving McKesson Corporation and removal fails for all the same reasons as before. Plaintiff Michael Dodich, a California resident, was prescribed *Dilantin*, a medication to help with seizures, in California. Plaintiff allegedly suffered serious injuries as a result. Plaintiff initially filed this claim in California state court and included McKesson Corporation, a corporation with its principal place of business in California, as a defendant. The other defendants are Pfizer Inc., Pharmacia Corp., Parke, Davis & Co., Warner Lambert Company, and Warner Lambert Company, LLC.

Defendants subsequently removed the case. None of the defendants other than McKesson have jurisdictional ties to California (Dkt. No. 17 at 3).

Plaintiff alleges that defendant McKesson distributed the allegedly defective drug and therefore maintains strict liability under California law. Plaintiff's argument is that under California law, distributors of pharmaceutical drugs, similar to other product distributors, can be held strictly liable for defective products. As plaintiff and McKesson are both from California, plaintiff argues complete diversity jurisdiction does not exist. Defendants contend that no viable claim exists against McKesson because plaintiff's complaint lacked specific factual allegations and strict liability does not apply to pharmaceutical drug distributors under California law. As such, defendants argue that because plaintiff fraudulently joined McKesson, it should therefore be excluded when considering diversity jurisdiction (*id.* at 4, 12).

## ANALYSIS

This action is part of a genre of product liability cases removed to federal court under the guise of McKesson's fraudulent joinder and later remanded. This order finds that every decision besides the two discussed below has remanded the action involving McKesson as a defendant. *See Zachman v. Johnson & Johnson*, No. CV 15-04285, 2015 WL 7717190 (N.D. Cal. Nov. 30, 2015) (Judge Richard Seeborg); *Spiers v. McKesson Corp.*, No. C 13-03046, 2013 WL 4671231, at *8 (N.D. Cal. Aug. 29, 2013) (Judge William Alsup); *Catlett v. McKesson Corp.*, No. CV 13-2067, 2013 WL 4516732, at *2 (N.D. Cal. Aug. 23, 2013) (Judge William Alsup); *Armstrong v. McKesson Corp.*, No. CV 13-3113, 2013 WL 4516668 (N.D. Cal. Aug. 23, 2013) (Judge William Alsup); *Hatherley v. Pfizer, Inc.*, No. CV 13-719, 2013 WL 3354458, at *5–6 (E.D. Cal. July 3, 2013) (Judge William B. Shubb); *K.P.P. v. Pfizer, Inc.*, No. CV 13-1674, 2013 WL 6047201, at *1 (S.D. Cal. Nov. 12, 2013) (Judge Roger T. Benitez); *K.E.R. v. Pfizer, Inc.*, No. CV 13-1401, 2013 WL 5755076, at *1 (E.D. Cal. Oct. 23, 2013) (Judge Lawrence K. Karlton); *A.S. v. Pfizer, Inc.*, No. CV 13-524, 2013 WL 2384320, at *9 (E.D. Cal. May 30, 2013) (Magistrate Judge Jennifer L. Thurston); *Oliver v. McNeil-PPC, Inc.*, No. CV 12-01865, 2013 WL 459630, at *19–20 (E.D. Cal. Feb. 4, 2013) (Magistrate Judge Stanley A. Boone); *Caouette v. Bristol-Myers Squibb* Co., No. CV 12-1914, 2012 WL 3283858 (N.D. Cal. Aug. 10,

2012) (Judge Edward M. Chen); *Marble v. Organon USA, Inc.*, No. CV 12-02213, 2012 WL 2237271 (N.D. Cal. June 15, 2012) (Judge William Alsup); *Rivera v. AstraZeneca Pharms. LP*, No. CV 12-02921, 2012 WL 2031348, at *15 (C.D. Cal. June 5, 2012) (Judge Gary Allen Feess); *Norris v. AstraZeneca Pharms. LP*, No. CV 12-0836, 2012 WL 1944760, at *8 (S.D. Cal. May 30, 2012) (Judge Jeffrey T. Miller); *Mendez v. AstraZeneca Pharms. LP*, No. CV 12-00535, 2012 WL 1911382, at *11 (E.D. Cal. May 25, 2012) (Judge Lawrence J. O'Neill); *Hamzey v. Bayer Corp.*, No. CV 10-0526, 2010 WL 2011529, at *11–12 (S.D. Cal. May 19, 2010) (Judge Jeffrey T. Miller); *Maness v. Bayer Corp.*, No. CV 10-0726, 2010 WL 2011535, at *12–13 (S.D. Cal. May 18, 2010) (Judge Jeffrey T. Miller); *Mandernach v. Bayer Corp.*, No. CV 09-02306, 2010 WL 532537, at *9–10 (C.D. Cal. Feb. 8, 2010) (Judge Jacqueline H. Nguyen); *Andrews v. Bayer Corp.*, No. CV 09-08762, 2010 WL 234808, at *9–11 (C.D. Cal. Jan. 12, 2010) (Judge Dean D. Pregerson); *Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc.*, No. CV 08-01831, 2008 WL 2477389 (N.D. Cal. June 18, 2008) (Judge Saundra Brown Armstrong); *Gerber v. Bayer Corp.*, No. CV 07-05918, 2008 WL 344219, at *3–11 (N.D. Cal. Feb. 6, 2008) (Judge Jeffrey S. White); *Aaron, et al. v. Merck & Co., Inc., et al.*, No. CV 05-4073, 2005 WL 5792361 (C.D. Cal. July 26, 2005) (Judge John F. Walter). This list is not exhaustive. For the reasons listed in these decisions as well as the reasons below, the current action is remanded as well.

### 1. LEGAL STANDARD.

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Accordingly, removal jurisdiction exists where a case filed in state court presents a federal question or involves diversity of citizenship and meets the statutory amount in controversy. *See* U.S.C. §§ 1331, 1332. Courts strictly construe the removal statute *against* finding federal subject-matter jurisdiction, and the defendant bears the burden of establishing the basis for removal. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). Where doubt exists regarding the right to remove an action, it should be resolved in favor of remand to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090

(9th Cir. 2003). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1996).

Although complete diversity is required under Section 1332, district courts may ignore the fraudulent joinder of non-diverse defendants in determining whether diversity jurisdiction exists. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Grancare, LLC, v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). Joinder is fraudulent "[i]f the plaintiff fails to state a claim against a resident defendant, and the failure is obvious according to the settled rules of the state." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). But "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F. 3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam)). A single valid claim against the resident defendant defeats a contention of fraudulent joinder. *Hatherley*, 2013 WL 3354458, at *2. "A defendant must have the opportunity to show that the individuals joined in the action cannot be liable on *any* theory." *Ritchey* 139 F.3d at 1318 (emphasis added).

The standard for determining whether a defendant is fraudulently joined is similar to that for a motion to dismiss. *See Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975). The difference, however, is that fraudulent joinder should not be found if there is any *possibility* that a plaintiff could state a claim against the defendant, even if the complaint actually fails to state a claim. *Grancare*, 889 F.3d at 547. In determining whether a removed claim is viable, courts typically "look only to a plaintiff's pleadings . . . ." *Ritchey*, 139 F.3d at 1318. The court may only go "somewhat further" by allowing a defendant to present additional facts demonstrating joinder was fraudulent. *See ibid.*

**2. MCKESSON WAS NOT FRAUDULENTLY JOINED.**

Defendants argue that plaintiff cannot state a valid claim against McKesson. Under California law, however, distributors can be held strictly liable for defective products.

4

*Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262–63 (1964). It is thus plausible that plaintiff may have a claim against McKesson. Defendants fail to cite any binding authority to the contrary.

Plaintiff first asserts against all defendants claims of: (1) strict product liability — failure to warn, (2) strict product liability — defective design, (3) manufacturing defect, (4) fraud, fraudulent concealment, and intentional misrepresentation, (5) breach or implied warranty, (6) negligence and negligent misrepresentation, (7) gross negligence, and (8) alter ego, corporate liability and civil conspiracy. The complaint contends that McKesson *specifically* conducted regular and sustained business in California by selling and/or *distributing* its products and services throughout the state, purposefully availed itself of the benefits and protections of the laws of the state, and has its principal place of business in San Francisco, California (Compl. at ¶¶ 8, 13, 15).

### A. Preemption Not Considered on Motion to Remand.

Defendants argue McKesson cannot be held liable under any theory of recovery because plaintiff's claims stem from a failure-to-warn, yet federal law precludes McKesson from changing the warning label as it is not certified to do so as the mere distributor who did not submit the New Drug Application (Dkt. No. 1 ¶ 46). Defendants' argument relies on *Mutual Pharmaceutical Corp., Inc. v. Bartlett*, 570 U.S. 472 (2013), and *Pilva, Inc. v. Mensing*, 564 U.S. 604 (2011), where the Supreme Court held state-law design-defect and failure-to-warn strict product liability claims against generic manufacturers are preempted by federal law. Defendants' argument implies that the manufacturing arguments in *Bartlett* and *Mensing* logically and obviously apply equally to distributors. Not so. Although logical, neither *Mensing* nor *Bartlett* specifically dealt with distributors and defendants do not identify binding authority extending the decisions. As such, it is not manifest that plaintiff has no possible claim against McKesson under California law.

Furthermore, the preemption argument has been rejected by our court of appeals. Our court of appeals has declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires searching into the merits of the plaintiff's case, even if that defense,

5

if successful, would prove fatal. *Grancare*, 889 F.3d at 549. A preemption defense goes to the merits of a plaintiff's case and cannot overcome the strong presumption against removal. *See Spiers*, 2013 WL 4671231, at *8. Our court of appeals has determined it is inappropriate to examine whether a plaintiff's claims are preempted by federal law on a motion to remand. *See Hunter*, 582 F.3d at 1045.

### B. California Law Does Not Rule Out Strict Liability For Prescription Drug Distributors.

As stated above, in California, distributors can also be liable for design-defect and failure-to-warn strict product liability. *Vandermark*, 61 Cal. 2d at 262–63. This order finds no California state court decision since *Vandermark* that says otherwise. No California law exempts distributors of prescription drugs from California's general rule that holds distributors strictly liable for failure-to-warn in defective product cases. *See Bostick v. Flex Equip. Co., Inc.*, 147 Cal. App. 4th 80, 88 (Cal. App. 2d Dist. 2007).

Defendants make a policy argument that the logic precluding pharmacists from strict liability applies equally to prescription drug distributors. This order, however, does not find the argument conclusive and California law remains ultimately unsettled on the issue. Pharmacists are not strictly liable for defects of prescription medicines in California. *Murphy v. E.R. Squibb & Sons, Inc.*, 710 P.2d 247 (Cal. 1985). The California Supreme Court did not say the same for mere distributors. The reasons are discernable. Pharmacists provide a *service* — the main point *Murphy* considered in applying California Business and Professional Code Section 4046. *Id.* at 252. Mere pharmaceutical drug distributors do not provide a direct service to the public. Similar to any other retailer or distributor, they are responsible for the product reaching the market. Furthermore, a pharmacist has no control over whether or not to distribute a drug — they are merely given the physician-signed prescription. Distributors such as McKesson, on the other hand, have the choice of whom and whom not to contract with. This order recognizes that pharmacists are not strictly liable and that *some* policy arguments for why that standard exists could analogously apply to distributors. Still, California has not made this distinction and there are strong arguments against such distinction. This order cannot state with complete certainty that no plausible claim exists against McKesson.

6

Defendants support their argument by citing *Brown v. Superior Court*, 751 P.2d 470, 478 (Cal. 1988). That decision concerned product liability for *manufacturers* of pharmaceuticals and is thus not controlling in regard to distributors. Though true that plaintiff cites no California decision finding prescription drug distributors strictly liable, neither do defendants cite any decision finding they are not. As such, the law remains disputed and there exists a chance that plaintiff can make a viable claim in state court.

Ultimately, the only two federal decisions that defendants cite suggesting that pharmaceutical distributors in California are not liable are both non-binding and fall flat. Defendants first cite *Skinner v. Warner-Lambert Co.*, No. CV 03-1643-R, 2003 WL 25598915 (C.D. Cal. Apr. 18, 2003) (Judge Manuel L. Real), a decision with minimal analysis and which has not been followed in its own district. *See J.K.B by Bennett v. Pfizer, Inc.*, No. CV 13-05043, 2013 WL 12129385 (C.D. Cal. Nov. 4, 2013) (Judge Margaret M. Morrow). Defendants next cite *Leeson v. Merck & Co.*, No. S-05-2240, 2006 WL 3230047 (E.D. Cal. Jan. 27, 2006) (Judge William B. Shubb), a decision that considered a motion to stay and whether to let multi-district litigation determine the issue of remand — motions not present in this situation. This order finds neither decision persuasive.

### C. Plaintiff Has Alleged Sufficient Facts To Support a Strict Liability Claim Against McKesson.

As mentioned previously, defendants contend that plaintiff's claims amount to a failure-to-warn. In order to state a viable claim for strict liability for failure-to-warn in California, all a plaintiff must establish is that a defendant's "failure to warn was a legal cause of the injury." *See Torres v. Xomox Corp.*, 49 Cal. App. 4th 1, 15 (Cal. App. 1st Dist. 1996). Here, plaintiff has provided enough detail in his complaint to meet this burden. The pleading standards set forth in Bell *Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* do not apply in state court. *See* 550 U.S. 544 (2007); 556 U.S. 662 (2009). In a state court complaint, plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1447, 1469–70 (Cal. App. 2d Dist. 2006). In light of California's requirement that pleadings be construed liberally, it is unfair for defendants to file for removal and then

7

demand more detail from plaintiff than was actually required for him to state a claim against McKesson. *See* Cal. Code Civ. Proc. § 452.

To make out a strict liability failure to warn claim, a plaintiff must allege: (1) "the defendant manufactured, distributed, or sold the product"; (2) "the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale"; (3) "that the potential risks presented a substantial danger to users of the product"; (4) "that ordinary consumers would not have recognized the potential risks"; (5) "that the defendant failed to adequately warn of the potential risks"; (6) "that the plaintiff was harmed while using the product in a reasonably foreseeable way"; and (7) "that the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm." *Rosa v. City of Seaside*, 675 F. Supp. 2d. 1006, 1011–12 (N.D. Cal. 2009) (Judge Jeremy Fogel).

Here, plaintiff alleges that McKesson distributed *Dilantin* (Compl. at ¶ 8). Plaintiff also alleges that McKesson distributed the *Dilantin* that plaintiff ingested during the relevant years (Compl. at ¶ 12). Defendants confirm McKesson's role as a *Dilantin* distributor without foreclosing the possibility that McKesson distributed plaintiff's medication. Next, plaintiff alleges that defendants knew of the defective nature of the drug and continued to produce it and failed to warn the public. Plaintiff contends that the *Dilantin* he ingested was defective at the time it was manufactured and distributed (Compl. at ¶¶ 93, 99, 101). Finally, plaintiff asserts he was harmed because he developed cerebellar atrophy.

Defendants make several arguments in response. *First*, defendants argue there are no specific allegations concerning McKesson as to any claim in the complaint, including this one. As detailed in the previous paragraph, however, defendants are incorrect.

*Second*, defendants contend that because plaintiff pleads his claims as to "defendants" generally, there is insufficient specificity to support remand. Our court of appeals stated in *Grancare* that arguments stating a plaintiff did not plead their claims with sufficient particularity go to the sufficiency of the complaint, rather than to the possible viability of the claims, and therefore do not establish fraudulent joinder. *Grancare*, 889 F.3d at 552. Moreover, the district court "must consider . . . whether a deficiency in the complaint can possibly be cured by granting

the plaintiff leave to amend." *Id.* at 550. The decisions defendants cite on the issue are not on point. They do not address strict liability for distributors and the majority are irrelevant to California law (Dkt. No. 27 at 5–9). The decisions plaintiff cites, though not binding, are all on point in their application of strict liability for distributors in California (Dkt. No. 17 at 16). *See, e.g.*, *Hatherley*, 2013 WL 3354458. Unlike other decisions finding such allegations to counsel against remand, here plaintiff does not fail to allege any specific activity on the part of the non-diverse defendant. *Cf. Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 391–93 (5th Cir. 2000). Plaintiff alleges that McKesson in particular distributed the *Dilantin* plaintiff ingested. Under California law, a "[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true." *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 550 (2007). Plaintiff bases his allegation that McKesson distributed the *Dilantin* he ingested on his knowledge that McKesson was in the business of distributing *Dilantin*. He further supports this belief by the fact that Pfizer has participated in the McKesson Pharmacy Intervention Program, which facilitates the distribution of *Dilantin* through a network of nearly 4,000 contracted, independent, and chain pharmacies. Lastly, plaintiff presents that McKesson's Drug Product Catalog confirms McKesson distributes various *Dilantin* products throughout the State of California (Compl. at ¶¶ 8, 10–11). This order finds his reasoning sufficient to support at least the possibility that the drugs plaintiff ingested were distributed by McKesson.

In order to meet the heavy burden required to justify removal based on fraudulent joinder, defendants must establish that "there is no possibility of recovery against a resident defendant according to the settled rules of the state." *Morris*, 236 F.3d at 1067. Defendants have failed to establish that there is no possibility the California courts will hold distributors strictly liable for failure to warn consumers of the risks of a prescription drug.

### D. Pleading Requirements for Fraud.

To show that McKesson is not a fraudulent defendant and secure remand, plaintiff needs only one viable claim against McKesson. Plaintiff contends that his claim for failure-to-warn

9

strict liability against McKesson is not foreclosed under California law, and he is correct as of current California decisions. As such, this order does not address the claim for fraud.

### E. No Discovery Needed Before Remand.

Defendants requested in their original removal notice that the Court defer ruling pending discovery as to whether McKesson distributed the medication that plaintiff ingested. This order **DENIES** that request. The burden is on defendants to show there is no possibility of recovery from McKesson, not the other way around. While the party seeking removal is entitled to present additional facts that demonstrate that a defendant has been fraudulently joined, the complaint will often be the most helpful guide in determining whether a defendant has been fraudulently joined. *Grancare*, 889 F.3d at 549.

## CONCLUSION

Because defendants have not met their burden, this order cannot find that McKesson is a fraudulently joined defendant. It remains a party and destroys complete diversity between plaintiff and defendants. Accordingly, the Court lacks subject-matter jurisdiction over this action and the motion to remand is **GRANTED**. The Clerk shall remand this action to the Superior Court for San Francisco County.

**IT IS SO ORDERED.**

Dated: July 26, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE